IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANE DOE, | * |
| Plaintiff, | * |
| vs. | * Civil Action No. ADC-15-2183 |
| BRIAN GORMLEY, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION DENYING DEFENDANT'S
MOTION TO DISMISS COMPLAINT**

On July 27, 2015, Jane Doe ("Plaintiff") filed an action in this court under the False Claims Act ("FCA"), the Maryland Consumer Protection Act ("MCPA"), and Maryland common law. *See* ECF No. 1 ("the Complaint"). After consideration of Defendant's Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment and Plaintiff's Response in Opposition to Defendant's Motion (ECF Nos. 21, 29), the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). In addition, for the reasons that follow, Defendant's Motion to Dismiss Complaint (ECF No. 21) is DENIED.

**STATEMENT OF THE FACTS**

From on or about September 3, 2010 through May 1, 2013, Jane Doe ("Plaintiff") rented a residential property owned by Brian Gormley ("Defendant"). The home was located at 126 N. Milton Avenue (the "Property"). The Property was rented to Plaintiff pursuant to the Housing Opportunities for Persons with AIDS Program ("HOPWA"), a federally regulated rent subsidy program which was implemented by the United States Department of Housing and Urban Development ("HUD") and administered through the local grantee, the Mayor's Office of Human Services – Homeless Service Program ("MOHS-HSP").

1

On September 3, 2010, Plaintiff and Defendant executed a lease agreement (the "Lease") wherein Plaintiff agreed to rent the Property from Defendant at a rate of $1,289.00 per month. Under the terms of the Lease, "[t]he initial rent to owner may not exceed the amount approved by the PHA in accordance with HUD requirements." ECF No. 1 at 41. Additionally, the lease provided that "Tenant shall pay all charges for gas, electricity, water, heat, and security alarm accrued in connection with said premises during the term of this tenancy, and in the event that Tenant fails to make such payments, then the amount thereof, in the discretion of the Landlord, may be added to and be deemed part of the rent due." ECF No. 1 at 33. Plaintiff was also responsible for "contacting BGE (Baltimore Gas and Electric) to insure that all gas and electric utilities are activated for said premises (…)." *Id.*

On September 17, 2010, Plaintiff and Defendant executed a Housing Assistance Payment Contract (the "HAP Contract") which reflected the MOHS-HWP approved monthly rental rate of $1,289.00. Under the terms of the HAP Contract, Plaintiff would pay $0 per month and HAP would subsidize the remaining $1,289.00. In addition, the HAP Contract provided that "[d]uring the HAP Contract terms, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the HA in accordance with HUD requirements." ECF No. 1 at 21. Plaintiff was not required to make any direct rent payments to Defendant under the terms of the HAP Contract.

After signing the Lease and the HAP Contract, Defendant advised Plaintiff that he would need to collect an additional $411.00 monthly payment from Plaintiff. Plaintiff agreed and paid the extra money. Plaintiff continued to pay Defendant the additional $411.00 per month until October 2012 when she was advised by a MOHS-HSP representative to stop making such payments.

## PROCEDURAL BACKGROUND

On July 27, 2015, Plaintiff filed the Complaint in this Court alleging that Defendant: (1) knowingly presented, or caused to be presented false or fraudulent claims for payment in violation of 31 U.S.C. § 3729(a)(1)(A) of the False Claims Act; (2) knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(B) of the False Claims Act; (3) engaged in unfair or deceptive trade practice in violation of Md. Code, Comm. Law § 13-101 *et seq.* of the Maryland Consumer Protection Act; (4) Fraud in violation of Maryland Common Law; (5) Unjust Enrichment in violation of Maryland Common Law; and (6) Money Had and Received in violation of Maryland Common Law.[1] On June 15, 2016, Defendant filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment and Memorandum of Points and Authorities and Request for Hearing ("Defendant's Motion"). On July 5, 2016, Plaintiff filed a Response in Opposition to Defendant's Motion to Dismiss Complaint or, in the Alternative, Motion for Summary Judgment. This matter is now fully briefed and the Court has reviewed Defendant's Motion as well as Plaintiff's Response.

## DEFENDANT'S ARGUMENTS RAISED

Turning to the case at issue, Defendant contends that Plaintiff's claim should be dismissed, or, in the alternative, that he is entitled to summary judgment as a matter of law. Defendant raises several affirmative defenses in support of dismissal of the Complaint: (1) that Plaintiff did not have standing to bring a claim under the False Claims Act (Counts 1 and 2); (2) that each of Plaintiff's state law claims are time-barred by Maryland's three-year statute of

---

[1] On June 22, 2016, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States Court for the District of Maryland and upon consent of the parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings.

limitations (Counts 3, 4, 5, and 6); and (3) that Plaintiff failed to state a claim upon which relief can be granted on each of the six (6) counts in the Complaint. Each of Defendant's arguments lack merit and are addressed below.

### STANDARD OF REVIEW

#### A. Rule 12(b)(6) Motion to Dismiss

When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court is required to "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 474, 474 (4th Cir. 1997); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) ("in evaluating a 12(b)(6) motion to dismiss, a court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint.") The purpose of a 12(b)(6) motion to dismiss is to test "the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of North Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir.1992). Accordingly, a Rule 12(b)(6) motion should only be granted if, after accepting all well-pled allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff "cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cit. 1999); *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988) ("[a court] must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory which might plausibly be suggested by the facts alleged.").

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but Rule 8(a)(2) does call for sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the alleged claims. *Id.* at 556. However, "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Legal conclusions, while they may provide the framework for a plaintiff's complaint, must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

Federal Rule of Civil Procedure 9(b) provides for a heightened standard for claims of fraud. Fed. R. Civ. P. 9(b). Plaintiffs alleging fraud claims are required to do so with sufficient particularity. *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (1999) Particularity under Rule 9(b) includes "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.*

In determining whether a complaint has met either standard, a court is not permitted to look at matters outside of the complaint in deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). If the Court does so, it must convert the motion into a motion for summary judgment and all parties should be given a reasonable opportunity to present material pertinent to such a motion. *See* Fed.R.Civ.P. 12(d) ("[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss] shall be treated as one for summary judgment and disposed of as provided in Rule 56. All parties must be given a reasonable opportunity to present all the material that is

pertinent to the motion."); *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991).

Defendant's Motion alleges several grounds for dismissal based on the pleadings in the Complaint. Thus, the Court shall treat Defendant's Motion as a Motion to Dismiss and shall consider only matters within the Complaint and exhibits attached thereto.

## DISCUSSION

**A. Plaintiff has proper standing to bring a claim under the False Claims Act.**

The FCA authorizes private individuals to file *qui tam* actions on the government's behalf against any entity that has knowingly presented a false or fraudulent claim to the government. *See* 31 U.S.C. § 3730(b)(1). Significantly, not every claim of fraud by a relator qualifies under the FCA; instead, the FCA bars federal courts from exercising subject matter jurisdiction over certain *qui tam* actions. *See* 31 U.S.C. § 3730(e)(1)-(4). Pertinent to the argument raised in Defendant's Motion is Section 3730(e)(4), referred to as the "public disclosure bar," which provides as follows:

> (4)(A) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed—
>
> (i)    in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
>
> (ii)    in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
>
> (iii) from the news media,
>
> unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.
>
> (B) For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions

in a claim are based, or (2) who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

31 U.S.C. § 3730(e)(4)(A), (B). The purpose of the public disclosure bar is "to prevent 'parasitic' *qui tam* actions in which *qui tam* relators, rather than bringing to light independently-discovered information of fraud, simply feed off of previous disclosures of government fraud." *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1347 (4th Cir.1994).

Defendant contends that Plaintiff is not qualified to proceed as a *qui tam* relator because "[Plaintiff] did not have direct and independent knowledge of any false claims allegedly involving [Defendant]." Defendant's argument fails on two fronts. First, the "original source" requirement of Section 3730(e)(4)(B) is contingent upon an occurrence of "public disclosure". In the current case, there is no indication of "public disclosure" as contemplated by Section 3730(e)(4)(A), nor does Defendant claim that such a disclosure has occurred. Second, Plaintiff qualifies as an "original source" within the meaning of Section 3730(e)(4)(B) because Plaintiff, as the paying tenant, had "direct and independent knowledge" of the $411.00 side-payments collected by Defendant. Therefore, the Court rejects Defendant's argument and finds that Plaintiff has standing to proceed as a *qui tam* relator under the False Claims Act.

**B. The Complaint does not clearly establish that Plaintiff's claims are time-barred by Maryland's three-year Statute of Limitations.**

Dismissal pursuant to a Rule 12(b)(6) motion is inappropriate unless, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiff, "it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Brooks v. City of Winston–Salem*, 85 F.3d 178, 181 (4th Cir.1996). A motion to dismiss filed under Federal Rule of Procedure

12(b)(6) generally cannot reach the merits of an affirmative defense, such as the defense that a plaintiff's claim is time-barred. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir.2007). Only where facts sufficient to rule on an affirmative defense "clearly appear [ ] on the face of the complaint" may the defense be reached by a motion to dismiss filed under Rule 12(b)(6). *Id* (stating that a motion to dismiss filed under Rule 12(b)(6) based on the affirmative defense that a claim is time-barred may be granted where "facts sufficient to rule on an affirmative defense are alleged in the complaint ... This principle only applies, however, if all facts necessary to the affirmative defense clearly appear on the face of the complaint"). "To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised." *Id.* at 466.

The Court reviews the Complaint to determine whether all the facts necessary to conclude that Plaintiff's claims are time-barred appear on its face. The Court notes that, because Plaintiff filed the Complaint on July 27, 2015, the specific inquiry is whether, on its face, the Complaint pleads facts such that it is clear that Plaintiff was put on notice of a cause of action on or before July 26, 2012. The Court finds that there are not sufficient facts in the Complaint to establish such notice to Plaintiff. Accordingly, the Court does not reach the merits of the Defendant's statute of limitations defense.

    **C. Plaintiff has properly stated a claim upon which relief can be granted on each of the six (6) counts in the Complaint.**

        i.    **Plaintiff has properly stated a claim upon which relief can be granted under the False Claims Act (Counts I and II).**

To meet the Rule 9(b) standard for stating a claim, Plaintiff's claim must include sufficient facts to support each of the four elements of False Claims Act liability, namely: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite

scienter; (3) that was material; and (4) caused the government to pay out money or forfeit moneys due. *Harrison*, 176 F.3d at 784. Rule 9(b) further requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, an FCA plaintiff must, at a minimum, describe "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* (internal quotations omitted).

Defendant argues that Plaintiff failed to plead any specific factual information alleging that the Defendant made false claims or fraudulent representations to the MOHS-HSP as is required under Rule 9(b). More specifically, Defendant asserts that "[Plaintiff's] claim fails based on the simple fact that she has not identified what claims, representations, statements and/or records were presented to the US (by way of MOHS-HSP) or to her were false or fraudulent." ECF No. 21 at 8. The Court disagrees.

A violation of the FCA occurs not only where an individual makes a false statement to the government to induce benefit, but also where a party to a government contract or program falsely certifies compliance with a pre-requisite condition in order to induce a government benefit ("false-certification"). *See Harrison*, 176 F.3d at 786. Stated another way, "where the government has conditioned payment of a claim upon a claimant's certification of compliance with, for example, a statute or regulation, a claimant submits a false or fraudulent claim when he or she falsely certifies compliance with that statute or regulation." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 902 (5th Cir. 1997).

In applying the false-certification theory, several courts have specifically held that collecting illegal side-rent, in the context of housing voucher programs, violates the FCA. *See Coleman v. Hernandez*, 490 F.Supp.2d 278 (D. Conn. 2007) (finding landlord liable under FCA

for charging tenant an additional $60 in violation of Section 8 rules prohibiting additional rent payments); *United States ex rel. Wade v. DBS Investments, LLC*, No. 11-CV-20155, 2012 WL 3759015 (S.D. Fla. Aug. 29, 2012) (granting summary judgment against landlord who accepted rent payment from tenant in excess of the maximum permitted under the HAP Contract in violation of the FCA); *United States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183 (D. Or. 2007) (holding that genuine issue of material fact as to whether landlord accepted side-rent precluded summary judgment).

Turning to Plaintiff's claim, there were sufficient facts in the Complaint to support each of the four required elements for an FCA claim. With respect to the fraud element, the HAP Contract with MOHS-HSP specifically provided that Defendant was not permitted to collect rent in excess of the amount approved by MOHS-HSP from Plaintiff. Accordingly, any additional rent in excess of the approved $1,289.00 collected by Defendant would qualify as fraud and/or abuse under the terms of the HAP Contract. Additionally, such facts would plausibly indicate that Defendant was aware of the falsity of his certification and continued to conduct transactions in violation of his contractual obligation to the Government.

Defendant further argues that the additional $411.00 collected from Plaintiff had no effect on the government because "the contracted for monthly rent subsidy matches exactly what was paid to [Defendant] by MOHS-HSP [.]" ECF No. 21 at 9. This assertion ignores the clear language of the HAP Contract which specifically provides that "[u]nless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract" and that the rights and remedies for breach "include recovery of overpayment, suspension of housing assistance payments, abatement or other reduction of housing assistance payments, termination of housing assistance payments, and

termination of the HAP contract." ECF No. 1 at 21-22. Based on that language, it is clear that the government's decision to pay Defendant was contingent on his certification that he would not receive additional rent payments from Plaintiff. Therefore, the collection of an additional $411.00 each month, allegedly in lieu of rent, affects one of the most basic terms of the HAP Contract and was material to the government's decision to continue paying the housing subsidy.

Plaintiff has therefore pled sufficient facts to support each of the four elements for False Claims Act liability. Accordingly, viewing all well-pled allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff has properly stated a claim upon which relief can be granted under the FCA.

  ii. **Plaintiff has properly stated a claim upon which relief can be granted under the Maryland Consumer Protection Act (Count III).**

Defendant moves for dismissal of Plaintiff's claim for violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Comm. Law Art. § 13-301 *et seq.*, arguing that Plaintiff "failed to sufficiently plead any material misrepresentation or false statement that she relied upon in making payments" ECF No. 21 at 14. The Maryland Consumer Protection Act prohibits "unfair or deceptive trade practices," and lists several categories of prohibited conduct. Md. Code Ann., Comm. Law Art. § 13-301. Relative to the present claim, the MCPA prohibits both the use of a "[f]alse, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers" and also a "[f]ailure to state a material fact if the failure deceives or tends to deceive. *Id.*

Under the MCPA, "an individual may only bring a claim if she can establish the nature of the actual injury of loss that he or she allegedly sustained as a result of the prohibited practice." *Allen v. CitiMortgage, Inc.*, No. CCB–10–2740, 2011 WL 3425665, at 10 (D. Md. Aug. 4, 2011)

(internal quotations omitted). Furthermore, under the heightened pleading standard for fraud claims set forth in Rule 9(b), a plaintiff must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (internal quotations omitted).

Here, Plaintiff alleges that Defendant engaged in unfair and deceptive trade practice when he demanded and accepted $411.00 of additional side-rent from Plaintiff beginning on October 2010 and continuing through October 2012. Plaintiff has therefore pled with sufficient particularity the events and actions giving rise to her claims against Defendant, namely that Defendant's misrepresentations caused her to suffer injury in the form of paying illegal side-rent to Defendant. Accordingly, viewing all well-pled allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff has properly stated a claim upon which relief can be granted under the Maryland Consumer Protection Act.

    iii.    **Plaintiff has properly stated a claim upon which relief can be granted for Fraud (Count IV).**

Defendant next argues that Plaintiff failed to state a claim for Maryland common law fraud. Under Maryland common law, to prevail on a fraud claim a plaintiff must prove: (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation. *See Sass v. Andrew*, 152 Md. App. 406, 429 (2003). In addition, the heightened pleading standard in Rule 9(b) further requires

that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

A "false representation" is a statement, conduct, or action that intentionally misrepresents a material fact. *Parker v. Columbia Bank*, 91 Md.App. 346, 359 (1992). A defendant may be liable for fraud or deceit "only if he knows that his representation is false, or is recklessly indifferent in the sense that he knows that he lacks knowledge as to its truth or falsity." *Ellerin v. Fairfax Savings*, F.S.B., 337 Md. 216, 232 (1995). Moreover, in order to recover for fraud, the misrepresentation must be made with the deliberate intent to deceive. *Sass*, 152 Md. App. at 429. In Maryland, there is no general duty to disclose facts to another party. *Id*. However, "[e]ven in the absence of a duty of disclosure, one who suppresses or conceals facts which materially qualify representations made to another may be guilty of fraud." *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 239 (1985).

Based on the information included in the pleadings, Defendant previously executed a HAP Contract with MOHS-HSP expressly prohibiting the collection of additional rent from Plaintiff. According to Plaintiff's allegation, Defendant subsequently requested and collected from Plaintiff an additional side-rent in the amount of $411.00 per month in violation of the contract terms. These facts would plausibly indicate that Defendant falsely represented to Plaintiff that she owed additional rent in order to defraud Plaintiff and that, based on the HAP Contract, Defendant was aware of the falsity of that representation. In addition, Plaintiff's payment of the additional $411.00 per month to Defendant from October 2010 through October 2012 indicates that Plaintiff relied on the false representations made by Defendant and suffered compensable injury as a result.

Therefore, viewing all well-pled allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff has properly stated a claim upon which relief can be granted for Maryland common law fraud.

> iv. **Plaintiff has properly stated a claim upon which relief can be granted for Unjust Enrichment (Count V).**

Defendant moves to dismiss Count V asserting that Plaintiff failed to state a claim upon which relief can be granted for unjust enrichment. The Maryland Court of Appeals has defined unjust enrichment as constituting three elements: (1) A benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value. *See County Comm'rs v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 95 (2000).

With regard to Count V for unjust enrichment, the Complaint alleges the following:

> 65. By paying the twenty-five consecutive side payments of $411.00 to Defendant as described herein, [Plaintiff] conferred the benefit of the illegally and wrongfully collected amounts upon Defendant.
>
> 66. Defendant knows of and appreciates the benefit conferred upon him, as money from the twenty-five consecutive side payments increased his earnings and cash flow and enriched Defendant at the expense of [Plaintiff].
>
> 67. Defendant has accepted and retained the benefit conferred upon him under the circumstances which are inequitable, because Defendant would not have received such benefit but for the violations of federal and state law.

ECF No. 1 at 13. Based on the above allegations, Plaintiff has pled sufficient facts to support each of the three elements for unjust enrichment liability. Accordingly, viewing all well-pled allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff has properly stated a claim against Defendant for unjust enrichment.

    v.    **Plaintiff has properly stated a claim upon which relief can be granted for Money Had and Received (Count VI).**

Defendant moves to dismiss Count VI asserting that Plaintiff failed to state a claim upon which relief can be granted for money had and received. A cause of action for money had and received "lies whenever the defendant has obtained possession of money which, in equity and good conscience, he ought not to be allowed to retain." *Benson v. State*, 389 Md. 615, 652 (2005). Actions for money had and received are limited to cases where money was paid (1) under mistake of fact or law, (2) by fraud or false pretenses, (3) upon an unexecuted illegal contract, or (4) in "certain circumstances," under an executed illegal contract. *Bourgeois v. Live Nation Entm't, Inc.*, 430 Md. 14, 46 (2013).

Here, Plaintiff alleges that Defendant illegally collected additional side-rent in the amount of $411.00 during the period from October 2010 to October 2012. Therefore, Plaintiff has pled sufficient facts to support a cause of action for money had and received. Accordingly, viewing all well-pled allegations in the Complaint as true and drawing all reasonable factual inferences from those facts in Plaintiff's favor, the Court finds that Plaintiff has properly stated a claim upon which relief can be granted for money had and received.

### CONCLUSION

In summation, the Court finds that dismissal is inappropriate on Counts I through VI of the Complaint. Therefore, Defendant's Motion to Dismiss (ECF No. 21) is hereby DENIED.

Date: 17th August 2016

A. David Copperthite
United States Magistrate Judge